UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                           Case No. 2:11-cr-63-FtM-29DNF

LUIS MACIAS ARRENDONDO
_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Suppress (Doc. #75) filed on April 17, 2012. The Government's Response (Doc. #78) was filed on April 27, 2012. The Court conducted an evidentiary hearing on May 2, 2012. For the reasons set forth below, the motion is denied.

**I.**

On November 24, 2010, a package shipped from Taxco, Mexico arrived at the United Parcel Service (UPS) hub in Louisville, Kentucky for entry into the United States and delivery to Aura Sanayoa at 21450 S. Tamiami Trail #54, Estero, Florida, 33928. As a border entry point, federal agents at this location routinely inspect packages arriving from outside the United States. Federal agents x-rayed this particular package and noted some anomalies. The agents then took the unopened package and its contents to Maya Daniel, an agent of the U.S. Customs & Border Protection, for further inspection. The package was opened, and the contents were found to be two vases and three ceramic block ornaments. The

officers drilled into the ornaments and found cocaine.  The package and its contents were then seized and logged as evidence.

Later on November 24, 2010, Special Agent Robert Lentz, Homeland Security Investigations (HSI) in Fort Myers, Florida received a call from the Louisville office advising him of the cocaine discovery.  The package and its contents were forwarded to Agent Lentz so that a controlled delivery of the package with cocaine could be arranged.

On the evening of November 26, 2010, Agent Lentz appeared at the home of a federal magistrate judge to obtain an anticipatory search warrant and a tracking order.  Agent Lentz signed an Application and Affidavit For Search Warrant (Doc. #56; Exh. 3A) seeking an anticipatory search warrant for the mobile home located at 21450 South Tamiami Trail, #54, Estero, Florida 33928.  The Application stated that the search warrant would only be executed if and when the package and its cocaine entered the premises. (Id., ¶ 4.)  The Application also requested permission to install a transmitting device in the package prior to its delivery. (Id., ¶ 5.)  This transmitting device would emit a signal alerting law enforcement officers when the package was opened, but could not track the movement of the package or monitor conversations. (Id.) The Application further sought permission to monitor the signals of the transmitting device, including while the package was in private areas such as inside the mobile home.  (Id., ¶ 6.)

At approximately 5:51 p.m. the magistrate judge signed an anticipatory Search Warrant (Doc. #65; Exh. 3B) for the mobile home. The Search Warrant made no reference to the installation or monitoring of a transmitting device in the package.

At the same time, Agent Lentz presented an Application of the United States of America For An Order Authorizing the Use of A Mobile Tracking Device, with an attached Affidavit of Robert Lentz (Doc. #54; Exh. 4A), to the magistrate judge. The tracking device application, signed by an Assistant United States Attorney, sought permission to install a mobile tracking device in the package and use it to monitor signals, including signals produced from within areas in which there was a reasonable expectation of privacy and in any jurisdiction in the United States. (Id.) The Application asserted that probable cause existed for issuance of the tracking order. (Id.) The Affidavit of Robert Lentz summarized the prior inspection of the package and the discovery of the cocaine. (Id.) The magistrate judge issued an Order Authorizing The Use Of A Mobile Tracking Device (Doc. #55; Exh. 4B), but because of a printer malfunction that Order was not signed by the magistrate judge until the next day, November 27, 2010. The Order authorized the installation, use, and monitoring of the tracking device in the package, but made no specific finding as to probable cause. (Id.)

Agent Lentz and his fellow officers then installed two devices into the package prior to its controlled delivery. A GPS tracking

device was installed, which allowed the officers to track the location of the package as it moved from place to place. A second device, variously referred to as a transponder, transmitter, or beacon, was also placed in the package, which allowed the officers to determine if the package had been moved or manipulated or opened, but did not disclose the location of the package. The agents re-sealed the package with its original contents, less one ornament which had been destroyed in the search and the cocaine which had been in that ornament. The remainder of the original contents, including cocaine, was placed in the package.

On November 29, 2010, an undercover officer posing as an UPS delivery person took the package to the Estero address, and at approximately 11 a.m. delivered it to a person claiming to be the addressee. As it turned out, this person was the next door neighbor, who later gave the package to the addressee when she returned to the mobile home shortly thereafter. The addressee took the package inside a very small mobile home, where it stayed unopened until approximately 5 p.m. The officers monitored both electronic devices during this time period, and thereby determined that nothing of significance occurred with the package.

At about 5 p.m., two vehicles arrived at the mobile home almost at the same time, a Cadillac and a Toyota. After about fifteen minutes, both vehicles left. The officers were unable to make any observations regarding the drivers or the package, but

observed that the Toyota went south on Tamiami Trail, while the Cadillac went north. By monitoring the tracking device the officers quickly determined that the package was in the Toyota. The officers never executed the anticipatory Search Warrant at the mobile home.

Numerous officers surveilled the Toyota as it made its way to Naples, Florida for the next hour. The officers observed two males in the Toyota, but could not make an identification. The officers relied upon information from the transponder to determine that the package was not opened during the trip, and information from the tracking device to help determine the speed and direction of the Toyota. Agent Lentz testified that without the electronic devices the agents would not have let the package leave in the Toyota. The Toyota was followed to an apartment complex in Naples, but by the time the officers arrived the Toyota was parked and the occupants were not in sight. The officers could tell from the tracking device that the package was no longer in the Toyota and was in a particular building, but could not tell which apartment now contained the package.

Shortly thereafter the officers saw a person later identified as Luis Macias Arrendondo (defendant) drive the Toyota away from the apartment complex with a passenger later identified as Lucas Gomez. The officers stopped the Toyota within a mile or so of the apartment complex based upon probable cause to believe the

occupants had possessed cocaine. Defendant immediately agreed to cooperate; Gomez immediately decided not to do so.

Defendant took the officers back to the apartment complex, and identified the apartment containing the package. The officers entered this apartment, and found the package unopened in a closet of a room rented by Gomez from the other occupants of the apartment. Defendant told the officers that the package and its contents were his.

Defendant was taken to the Drug Enforcement Administration (DEA) office and continued his cooperation. After receiving his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), defendant told the officers that the package was coming from Mexico; that he was getting his foot in the door with a local drug group; that he was receiving the package for a member of that group; and that he would weigh the package and then deliver it to its owner in Bonita Springs, Florida. Defendant also stated that Gomez had a very minor role, and that Gomez was making a little money by providing the address of his sister-in-law as the location for the delivery of the package. The officers determined that the sister-in-law did not know the contents of the package, but had received pizzas for her family and children's toys in exchange for allowing delivery of the package to her mobile home. The officers determined that the Toyota was owned by defendant, but could not determine if he had been the driver from Estero to Naples.

**II.**

Defendant asserts that his rights under the Fourth Amendment were violated by the installation and monitoring of the electronic devices in the package, and by his subsequent arrest and questioning. (Doc. #75, p. 3.) The United States argues that defendant "lacks standing to raise a Fourth Amendment [claim] in this case" (Doc. #78, p. 10), and argues that in any event defendant's Fourth Amendment rights were not violated by the conduct of the agents (id., pp. 6-19). The Court concludes that defendant has standing to challenge some, but not all, of the government conduct in this case, but that none of the conduct violated defendant's Fourth Amendment rights.

**A. General "Standing" Principles**

A defendant may challenge the admissibility of evidence based upon a violation of the Fourth Amendment only if his own Fourth Amendment rights were violated by the challenged search or seizure. United States v. Padilla, 508 U.S. 77, 81 (1993); Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). A defendant's own Fourth Amendment rights are at issue only if defendant had a legitimate expectation of privacy in the area searched or the item seized. Rakas, 439 U.S. at 139-40. "A person has a legitimate expectation of privacy if (1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable." United States v. Harris, 526 F.3d

1334, 1338 (11th Cir.), cert. denied, 555 U.S. 1014 (2008). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." United States v. Segura–Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006). Once the issue of defendant's capacity to claim the protection of the Fourth Amendment is raised by the government, defendant has the burden of establishing his capacity. Rakas, 439 U.S. at 130 n.1; Segura–Baltazar, 448 F.3d at 1286. If defendant fails to do so, he may not challenge the police conduct. United States v. Lehder-Rivas, 955 F.2d 1510, 1521 (11th Cir.), cert. denied, 506 U.S. 924 (1992).

**B. Packages In General**

As a general matter, individuals do not surrender their expectations of privacy in closed containers when they send the containers by mail or common carrier. United States v. Van Leeuwen, 397 U.S. 249, 251 (1970); United States v. Jacobsen, 466 U.S. 109, 114 (1984); United States v. Smith, 39 F.3d 1143, 1144 (11th Cir. 1994). Both senders and addressees of packages can reasonably expect that the government will not open the package. United States v. Villarreal, 963 F.2d 770, 773-74 (5th Cir. 1992)(citations omitted). Individuals may also assert a reasonable expectation of privacy in packages addressed to them under fictitious names. United States v. Garcia-Bercovich, 582 F.3d

-8-

1234, 1238 (11th Cir. 2009)(citing Villarreal, 963 F.2d at 774); United States v. Richards, 638 F.2d 765, 767, 770 (5th Cir. 1981). The Eleventh Circuit has noted that other circuits have held there is no legitimate expectation of privacy where defendant is neither the sender nor addressee of a letter or package. United States v. Smith, 39 F.3d 1143, 1145 (11th Cir. 1994); United States v. Banks, 3 F.3d 399, 402 n.2 (11th Cir. 1993). In Smith, the Eleventh Circuit upheld a finding of no legitimate expectation of privacy in a letter where defendant was neither the sender nor addressee and gave equivocal testimony regarding his ownership interest in the letter. As was stated in United States v. Campbell, 434 F. App'x 805, 809 (11th Cir. 2011), "[a] defendant may have a reasonable expectation of privacy in a package even where the package is not addressed in the defendant's name, provided that he establishes a connection between himself and the addressee," citing Richards, 638 F.2d at 770.

In this case, defendant has not shown a sufficient connection between himself and the package to establish a legitimate expectation of privacy in the package or its contents. Defendant was neither the sender nor the addressee of the package. While defendant asserted the package and contents were his, the evidence established that defendant solicited Gomez, who in turn solicited his sister-in-law, to agree to be the addressee and receive the package at a location which had no connection with defendant. This

is not a situation where the addressee was a fictitious name or alias of defendant; the addressee was a real person twice-removed from defendant. Defendant had no legitimate expectation of privacy in the package or the contents at the time it was inspected, opened, or seized, or at the time when the two electronic devices were installed and the monitoring began.

**C. Border Inspection and Seizure**

The Court will assume, in the alternative, that defendant's claim to at least temporary ownership of the package and its contents was sufficient to create a legitimate expectation of privacy. The conduct of the agents, however, lawfully extinguished any legitimate expectation of privacy.

While those of us in Florida do not normally think of Louisville, Kentucky in terms of being a border, both sides in this case agree that the conduct of the agents in inspecting, opening, searching, and seizing the package and its contents was lawful under the border exception to the Fourth Amendment. The Court agrees. As a result, the "notable exception" to the privacy of packages noted in Villarreal applies in this case. Villarreal, 963 F.2d at 774 n.1.

Because of the United States' strong interest in national self-protection, "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." United States v. Montoya

de Hernandez, 473 U.S. 531, 538 (1985). "It is beyond peradventure that searches made at the border, pursuant to the long-standing right of the sovereign to protect its territorial integrity, renders preliminary searches and seizures per se reasonable . . . Entrants, therefore, are subject to search even in the absence of reasonable suspicion, probable cause, or warrant." Denson v. United States, 574 F.3d 1318, 1339 (11th Cir. 2009)(citations omitted). Those searches are "reasonable simply by virtue of the fact that they occur at the border." Id.; see also United States v. Ramsey, 431 U.S. 606, 619 (1977)("Border searches, then, from before the adoption of the Fourth Amendment, have been considered to be 'reasonable' by the single fact that the person or item in question had entered into our country from outside."); Illinois v. Andreas, 463 U.S. 765, 769 n.1 (1983)(citing Ramsey, 431 U.S. 606)("[T]he United States Government has the undoubted right to inspect all incoming goods at a port of entry."). Therefore, the search and seizure of the package in Louisville, Kentucky was lawful under the Fourth Amendment. Thus, even if defendant had a legitimate expectation of privacy in the package as of its arrival in Louisville, his Fourth Amendment rights were not violated.

The lawful search and seizure of the package by law enforcement officers extinguished any continued legitimate expectation of privacy in the package.

> The threshold question, then, is whether an individual has a legitimate expectation of privacy in the contents

> of a previously lawfully searched container. It is obvious that the privacy interest in the contents of a container diminishes with respect to a container that law enforcement authorities have already lawfully opened and found to contain illicit drugs. No protected privacy interest remains in contraband in a container once government officers lawfully have opened that container and identified its contents as illegal. The simple act of resealing the container to enable the police to make a controlled delivery does not operate to revive or restore the lawfully invaded privacy rights.

Andreas, 463 U.S. at 771. The Supreme Court has recognized, however, that if there is an interruption of control or surveillance of the package, a person's expectation of privacy in the package may again become protected by the Fourth Amendment. Id. at 772. However, "absent a substantial likelihood that the contents have been changed, there is no legitimate expectation of privacy in the contents of a container previously opened under lawful authority." Id. at 773; see also United States v. Quintero, 848 F.2d 154, 155 (11th Cir. 1988).

The package and its contents was shipped from the agents in Louisville, Kentucky to the agents in Fort Myers, Florida. There was no substantial likelihood that the contents had been changed, and, therefore, no legitimate expectation of privacy in the package or contents. Under the Fourth Amendment, no search warrant or other court authorization was necessary to subsequently re-open the package or to install the tracking device or transponder in the package.

**D. Delivery and Monitoring of Package at Mobile Home**

Defendant does not assert that his constitutional rights were violated when the package was delivered to the mobile home in Estero and the electronic devices were monitored by the officers. The Court agrees that defendant had no legitimate expectation of privacy in the package or its contents as it was delivered to the mobile home and monitored by the agents, or in the mobile home.

**E. Monitoring of Package in the Toyota**

Defendant does challenge, however, the lawfulness of the agents conduct after the package was placed in his Toyota and the electronic devices were monitored by the officers. Defendant has a legitimate privacy interest in the Toyota. Defendant was the owner of the Toyota, and was either its driver or a passenger from Estero to Naples, and was the driver after the Toyota left the Naples apartment complex. A passenger who has a possessory interest in the vehicle has a legitimate expectation of privacy in the interior of the vehicle. Compare United States v. Lee, 586 F.3d 859, 864 (11th Cir. 2009).

Defendant argues that the installation of the two electronic devices and the monitoring violated his Fourth Amendment rights. The Court has already found that the installation of the two devices did not violate defendant's Fourth Amendment rights. Installation of tracking devices while a package is in the lawful possession of law enforcement does not require a search warrant.

United States v. Karo, 408 U.S. 705, 712 (1984). It is a separate question, however, whether monitoring the devices without a search warrant[1] constituted a violation of the Fourth Amendment. Defendant argues that the case is governed by United States v. Jones, 132 S. Ct. 945 (2012).

In Jones, law enforcement officers placed a tracking device on the undercarriage of a vehicle exclusively driven by defendant, and monitored the vehicle's movements for the next month, all without a valid warrant. Id. The Supreme Court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'" Id. at 949 (footnote omitted). The Jones court emphasized that the government "physically occupied private property for the purpose of obtaining information," which it found to have constituted a "search" within the meaning of the Fourth Amendment when it was adopted, and a search under its precedent. Id. at 949-51. Jones stated that the reasonable-expectation-of-privacy test articulated by Katz v. United States,

---

[1] The anticipatory Search Warrant issued by the magistrate judge did not authorize installation or monitoring of electronic devices in the package, despite a request for such authorization in the application. While a magistrate judge clearly has the authority to issue a tracking device warrant, Fed. R. Crim. P. 41(b)(4), neither the search warrant nor the tracking device order complied with the requirements for such a warrant, Fed. R. Crim. P. 41(e)(2)(C), and the agents did not comply with the execution and return requirements of Fed. R. Crim. P. 41(f)(2).

-14-

389 U.S. 347 (1967) added to, but did not substitute for, the common-law trespass test. Jones, 132 S. Ct. at 952.

The facts of this case are more closely aligned with Karo and United States v. Knotts, 460 U.S. 276 (1983) than with Jones. In Karo, the government came into physical contact with the container before it belonged to the defendant. "The transfer of the container with the unmonitored beeper inside did not convey any information and thus did not invade Karo's privacy." Jones, 132 S. Ct. at 952 (citing Karo, 468 U.S. at 712). Jones found that the conclusion was "perfectly consistent with the one we reach here. Karo accepted the container as it came to him, beeper and all, and was therefore not entitled to object to the beeper's presence, even though it was used to monitor the container's location." Jones, 132 S. Ct. at 952. Unlike Jones, no law enforcement officer trespassed on defendant's vehicle to install a tracking device. Indeed, law enforcement officers did nothing to place the package in the vehicle. The package was simply delivered to the mobile home according to the instructions given by defendant or a conspirator to UPS, and the conduct of the conspirators was allowed to take its natural course.

Karo did hold, however, that some monitoring of the tracking device required a warrant under the Fourth Amendment. The Court held that the monitoring of a beeper in a location not open to visual surveillance (there a residence) violated the Fourth

Amendment rights of those who had a justifiable interest of privacy in the location. Karo, 468 U.S. at 714-18. Here, the beepers were monitored only while the Toyota was moving in public places subject to lawful visual surveillance. Therefore, the monitoring did not violate the Fourth Amendment.

**F. Stop of Toyota**

Agent Lentz testified that the Toyota was stopped after leaving the apartment complex based on probable cause to believe its occupants had been or were in possession of cocaine. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992). In determining if such a reasonable belief exists, appellate courts must review the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 233 (1983). The Court agrees that such probable cause existed and, therefore, the traffic stop was lawful.

**G. Seizure of Package From Apartment**

Defendant cooperated with the officers and took them to the apartment which contained the package, and does not challenge the seizure of the package. For completeness, the government asserted that the entry into the apartment and seizure of the cocaine was pursuant to the consent by defendant, while Agent Lentz testified

he was executing the anticipatory Search Warrant issued by the magistrate judge.  An anticipatory search warrant is proper if there is probable cause that at some future time certain evidence will be located at a specified place.  United States v. Grubbs, 547 U.S. 90 (2006).  Here, the anticipatory Search Warrant did not identify the Naples apartment and there was no probable cause to believe evidence or contraband would be present there at the time the search warrant was issued.  While an oral search warrant can be valid, Fed. R. Crim. P. 41(d)(3), there is insufficient testimony to support the existence of a valid oral search warrant.  In any event, defendant did not establish, and does not claim to have had, any reasonable expectation of privacy in the Naples apartment.

Accordingly, it is now

**ORDERED**:

Defendant's Motion to Suppress (Doc. #75) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___14th___ day of May, 2012.

*John E. Steele*
JOHN E. STEELE
United States District Judge


Copies:
Counsel of Record